[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Henderson*, Slip Opinion No. 2020-Ohio-4784.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4784

THE STATE OF OHIO, APPELLEE, *v*. HENDERSON, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Henderson*, Slip Opinion No. 2020-Ohio-4784.]

*Criminal law—State cannot challenge a voidable sentence through a postconviction motion for resentencing—R.C. 5145.01 cannot be read to give correctional institutions the power to transform a sentence from what the sentencing entry expressly contains—A judgment or sentence is void only if it is rendered by a court that lacks subject-matter jurisdiction over the case or personal jurisdiction over the defendant—If a court has jurisdiction over the case and the person, any error in the court's exercise of that jurisdiction is voidable, including sentences in which a trial court fails to impose a statutorily mandated term—Court of appeals' judgment reversed in part and cause remanded.*

(No. 2019-0182—Submitted February 12, 2020—Decided October 7, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 106308, 2018-Ohio-5155.

---

**FRENCH, J.**

{¶ 1} In this case, we consider whether to declare a sentence void and allow the state to correct a sentencing error through a motion for resentencing. To answer that question, we consider the last three decades of our void-sentence analysis, reject that analysis, and return to our traditional understanding of the distinction between void and voidable sentences. Our decision today takes us the next and final step toward a return to that traditional understanding after our recent decision in *State v. Harper*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___, which held that "[w]hen a case is within a court's subject-matter jurisdiction and the accused is properly before the court, any error in the exercise of that jurisdiction in imposing postrelease control renders the court's judgment voidable," *id*. at ¶ 4. Here, we conclude that sentences based on an error, including sentences in which a trial court fails to impose a statutorily mandated term, are voidable if the court imposing the sentence has jurisdiction over the case and the defendant. Applying that reasoning, we conclude easily that defendant-appellant Rogers T. Henderson's sentence was voidable. Even though the trial court should have sentenced Henderson to an indefinite sentence of 15 years to life for his offense, he was sentenced to a definite sentence. Eighteen years later, the state tried to correct that sentence by filing a motion for resentencing, which the trial court granted and the court of appeals affirmed. Because the state cannot challenge Henderson's voidable sentence through a postconviction motion for resentencing, we reverse the decision of the Eighth District Court of Appeals and remand this matter to the trial court to vacate the sentencing entry it issued on September 20, 2017.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} Henderson was arrested on September 22, 1999, for his involvement in the death of Lester Bryant. Henderson was indicted on one count of aggravated murder, in violation of R.C. 2903.01. The charge included two firearm

specifications, pursuant to R.C. 2941.141 and 2941.145. On November 30, 1999, Henderson pleaded guilty to one count of murder, in violation of R.C. 2903.02(A), with one three-year firearm specification, R.C. 2941.145. At the time of Henderson's plea and sentencing, a murder conviction carried an indefinite sentence of 15 years to life. The firearm specification added a three-year mandatory consecutive sentence. During the plea, the trial court told Henderson that the charge to which he was pleading guilty carried a sentence of "15 years to life." Henderson said he understood that sentence. During the sentencing portion of the hearing, though, the trial court stated the following, in totality, regarding the sentence it was imposing:

> Boy, Mr. Henderson, you're really pathetic. 15 years on the underlying offense, three-year firearm specification, to be served prior to and consecutive with the 15 years. Mr. Henderson, shame on you.

The trial court did not mention the life-tail portion[1] of the sentence after it accepted Henderson's plea. The state did not object to or otherwise challenge the trial court's omission of the life-tail portion of the sentence. The sentencing entry also failed to include the life-tail portion of the sentence, stating only: "The court imposes a prison term * * * of 3 years to run prior to and consecutive with base charge of 15 years." Neither party filed a direct appeal.

---

1. A sentence with a "life tail" is a sentence that is indefinite in length, beginning with the mandatory minimum term the trial court imposes and extending up to a maximum term of life in prison. *See State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124, 2010-Ohio-2671, 931 N.E.2d 110, ¶ 22. An offender completes the incarceration portion of his indefinite sentence after he becomes eligible for parole and the adult parole authority authorizes his release. *See* R.C. 2967.01(E). R.C. 2967.13 governs when an offender who is serving a sentence with a life tail becomes eligible for parole.

**{¶ 3}** On March 31, 2009, Henderson filed a motion for sentencing in which he argued that his sentence was unconstitutional and void because the judge imposed a term of postrelease control. In support of his motion, Henderson cited this court's cases on void sentences and the trial court's statement during Henderson's plea and sentencing hearing that "[a]lthough the courts of appeals in the State of Ohio have determined that the following is unconstitutional, sir, I will advise you, until the Supreme Court of Ohio speaks, that you may be placed on post-release control at the expiration of a prison term." He moved to vacate his sentence and requested a new sentencing hearing. The state opposed the motion, arguing that Henderson's sentence did not include a term of postrelease control because the sentencing entry itself did not impose postrelease control on Henderson. The state represented that Henderson was sentenced to precisely "15 years on the underlying offense." It argued that Henderson "was properly sentenced and he is not entitled to a resentencing." The trial court denied Henderson's motion.

**{¶ 4}** On August 20, 2009, Henderson filed another motion for sentencing. In this motion, Henderson argued that his sentence was void because the trial court had sentenced him to "15-years flat" when the statute required that he receive "an indefinite term of fifteen years to life." He requested that the trial court resentence him to correct the void sentence. The state did not respond to that motion. The trial court denied the motion in an entry, stating only: "motion for sentencing filed 8/20/09 is denied."

**{¶ 5}** On June 28, 2010, Henderson filed a motion to declare his original 15-year sentence final under the doctrine of collateral estoppel. The state opposed the motion, representing that the original sentencing journal entry became final and appealable when it was filed in 1999, negating any need to finalize it again. It argued that Henderson was just trying to restart the appeal process after failing to avail himself of a direct appeal. The court did not rule on that motion.

4

**{¶ 6}** In May 2011, the Bureau of Sentence Computation sent a letter to the trial court and the prosecutor informing them that Henderson had been mistakenly sentenced to a definite 15-year term instead of an indefinite term that included a life tail. On June 15, 2011, the state filed a motion to correct the sentence because the trial court only imposed a 15-year sentence instead of a sentence of 15 years to life. The trial court did not act on the bureau's letter or the state's motion.

**{¶ 7}** On August 31, 2017, Henderson filed a motion for jail-time credit. He represented that he entered custody on September 24, 1999, and was sent to prison on December 1, 1999, but that he was awarded only 2 days of jail-time credit for this time period. He requested an additional 66 days of jail-time credit, for a total of 68 days. The trial court granted his motion on September 14, 2017, but it awarded him a total of 66 days of jail-time credit. The record does not indicate whether the trial court intentionally or inadvertently reduced Henderson's request from 68 days to 66 days.

**{¶ 8}** On September 15, 2017, a few days before Henderson was set to be released from custody, the state filed a motion for resentencing to correct Henderson's sentence. The state argued that Henderson's original sentence was void because the trial court imposed an unlawful definite 15-year sentence. In that motion, the state represented that Henderson was due to be released on September 19, 2017. Henderson argued that the court lacked jurisdiction to resentence him because he had already completed his sentence. According to Henderson, he entered custody on September 22, 1999, and was entitled to 71 total days of jail credit. Accounting for five leap-year days that the Bureau of Sentence Computation deducts in computing a sentence, his sentence was complete on September 16, 2017. Henderson argued that his expectation in the finality of his sentence fully matured even before his sentence was complete and that double-jeopardy and due-process considerations prevented the trial court from resentencing him.

**{¶ 9}** The state filed a supplemental motion on September 20, 2017. In this motion, the state argued that R.C. 5145.01 automatically transforms the unlawful definite sentence the trial court imposed into the indefinite sentence it should have imposed.

**{¶ 10}** Henderson also filed a motion on September 20, 2017, requesting additional jail-time credit—71 days total. He represented that he entered custody on September 22, 1999, when he was arrested, but the trial court mistakenly used the date he was booked into county jail when it calculated his jail-time credit. He was not booked until two days after he was taken into custody. Furthermore, he argued that he was not imprisoned until December 2, 1999, not December 1, 1999, as he previously believed. Those additional three days plus the two days the trial court inexplicably failed to include in its previous decision awarding jail-time credit amounted to 71 days total.

**{¶ 11}** The trial court held a hearing on the state's motion for resentencing on September 20, 2017. During the hearing, a supervisor from the Bureau of Sentence Computation who calculates inmate release dates testified about when Henderson completed his sentence. She stated that the Bureau of Sentence Computation starts with the offender's admission date, here December 2, 1999. It then adds the sentence, here 18 years total—15 years for the murder charge and 3 years for the firearm specification. The bureau then subtracts the jail-time credit that has been awarded. Here, it originally subtracted 66 days because that was what the trial court had already awarded Henderson. It then subtracts a day for each leap year that the offender is incarcerated, because sentences are calculated based on a 365-day calendar. Henderson had five days subtracted, representing leap years in 2000, 2004, 2008, 2012, and 2016. The supervisor indicated that an offender is typically awarded credit for his conveyance days, which include the day after sentencing through the day prior to his admission to a correctional facility. Based on the jail-time credit Henderson was already awarded, his sentence would have

ended on September 21, 2017. But with the extra days Henderson requested that the court add to his jail-time credit, his sentence would have been completed on September 16, 2017. Specifically, she testified that an inmate who entered custody on September 22, 1999, and who received an 18-year sentence, would be released on September 16, 2017. The court agreed that Henderson had been in custody since September 22, 1999. Nonetheless, the court denied the motion for jail-time credit during the hearing, providing no explanation except to say that it did not affect the court's final decision.

{¶ 12} The trial court ultimately granted the state's motion for resentencing. The court said Henderson received a "voidable sentence, not a void sentence." And the court found that R.C. 5145.01 applied to convert Henderson's sentence into an indefinite term. The court resentenced Henderson to a term of 15 years to life on the murder charge and three years on the firearm specification, to run consecutively. Thereafter, the trial court issued entries granting the motion for resentencing, resentencing Henderson, and denying Henderson's motion for jail-time credit.

{¶ 13} Henderson appealed the trial court's decision to resentence him. On October 31, 2017, after Henderson filed his notice of appeal but before the appeal was briefed, the trial court revisited its prior decision and granted Henderson's motion for additional jail-time credit. It awarded him a total credit of 69 days, without explaining why it did not award him the full 71 days he requested.

{¶ 14} The Eighth District Court of Appeals affirmed in part the trial court's decision on the state's motion for resentencing. The court applied R.C. 5145.01 to automatically transform Henderson's sentence from the definite 15-year sentence originally imposed into an indefinite 15-years-to-life sentence the law required he receive. Because of that statute, the court found the sentence was not void; it was always correct. The trial court, therefore, erred in resentencing Henderson. Even though the trial court did not need to resentence Henderson, the Eighth District affirmed the trial court's September 20, 2017 resentencing. In its decision, the court

also reversed the trial court's decision belatedly granting Henderson's motion for additional jail-time credit. The appellate court awarded Henderson the additional two days of jail-time credit that the trial court had failed to award him, for a total of 71 days of jail-time credit. The state has not appealed any of the jail-time credit Henderson was given by the trial court or the court of appeals. Henderson filed an appeal with this court, and we accepted jurisdiction on the following two propositions of law:

> 1. A sentence of imprisonment that has already been served in full cannot be increased even if the original sentence is below the minimum sentence required by statute.
>
> 2. R.C. 5145.01 cannot transform a definite sentence imposed by a trial court by adding an indefinite tail to that sentence.

## ANALYSIS

### Because the trial court erred in sentencing Henderson to a definite term, the sentence is voidable

{¶ 15} Henderson first asks us to hold that a sentence of imprisonment that has already been served in full cannot be increased, even if the original sentence is below the minimum sentence required by statute. We do not need to address that issue though, because the state cannot challenge a voidable sentence through a postconviction motion for resentencing.

### Our void-versus-voidable jurisprudence

{¶ 16} This court has long recognized the finality of a decision rendered by a court that had both subject-matter jurisdiction over the case and personal jurisdiction over the parties. *See Sheldon's Lessee v. Newton*, 3 Ohio St. 494 (1854). If the court had jurisdiction, it was "altogether immaterial how grossly irregular, or manifestly erroneous, its proceedings may have been"; its final order

could not be regarded as a nullity and could not be collaterally attacked. *Id*. at 498. A judgment was void only if the court proceeded without jurisdiction. *Id*. at 498-499. This concept applied equally to errors made in criminal sentencing. *See Ex parte Shaw*, 7 Ohio St. 81 (1857). If the court pronouncing the sentence had jurisdiction to do so, a sentence imposed in excess of that permitted by law was "erroneous and voidable, but not absolutely void." *Ex parte Van Hagan*, 25 Ohio St. 426, 432 (1874); *accord Ex parte Allen*, 91 Ohio St. 315, 326, 110 N.E. 535 (1915). Plainly, a sentencing error was never considered a jurisdictional error. *See In re Winslow*, 91 Ohio St. 328, 330, 110 N.E. 539 (1915).

{¶ 17} In *Tari v. State*, 117 Ohio St. 481, 159 N.E. 594 (1927), we explained the difference between a void judgment and a voidable judgment and the rationale behind the distinction. The question simply turns on whether the court had jurisdiction over the subject matter and the person. *Id*. at 492. A void judgment is rendered by a court without jurisdiction. It is a mere nullity and can be disregarded. It can be attacked in collateral proceedings. *Id*. at 494. A voidable judgment is one pronounced by a court with jurisdiction. The *Tari* court reiterated that unless it is vacated on appeal, a voidable judgment has the force of a valid legal judgment, regardless of whether it is right or wrong. *Id*. The failure to timely—at the earliest available opportunity—assert an error in a voidable judgment, even if that error is constitutional in nature, amounts to the forfeiture of any objection. *Id*. at 495.

{¶ 18} The court in *Tari* explained that allowing erroneous judgments to be collaterally attacked would seriously jeopardize the finality of judgments. *Id*. at 498. At that time, this court understood that adopting anything but a bright-line jurisdictional rule to govern all cases, civil and criminal, would "result in hopeless confusion." *Id*.

{¶ 19} For decades, we recognized the general rule that if a trial court has jurisdiction over the person and the subject matter, a judgment rendered based on the exercise of jurisdiction in excess of that permitted by law is voidable, not void.

*Stahl v. Currey*, 135 Ohio St. 253, 259-261, 20 N.E.2d 529 (1939); *State v. Perry*, 10 Ohio St.2d 175, 178-179, 226 N.E.2d 104 (1967). The court in *Perry* held that if a judgment is voidable, the doctrine of res judicata bars a party from raising and litigating in any proceeding, except a direct appeal, claims that could have been raised in the trial court. *Perry* at paragraph nine of the syllabus. Again, this secures parties' expectations in the finality of a judgment.

{¶ 20} But in *State v. Beasley*, 14 Ohio St.3d 74, 471 N.E.2d 774 (1984), the court shifted. In that procedurally unique case, the trial court had intentionally disregarded the sentencing statute that required imposition of a minimum prison sentence. Instead, it imposed only a monetary fine. Rather than file a direct appeal, the state filed a mandamus action in the court of appeals. The court of appeals issued the writ of mandamus requiring the trial court to impose the correct sentence. After the trial court resentenced the defendant, she filed a direct appeal and argued that the resentencing violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. This court declared that jeopardy had not attached and the defendant could be resentenced because the original sentence was a nullity. As part of its analysis, the court said: "Any attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void." *Id*. at 75.

{¶ 21} *Beasley* relied on another unique case that pronounced a sentence void. *Id.* In *Colegrove v. Burns*, 175 Ohio St. 437, 195 N.E.2d 811 (1964), this court, in dicta, said that a sentence for a probation violation was "void" because there is no sentence that can be imposed on a probation violation itself. *Id.* at 438. Rather, the proper procedure is to revoke probation and impose a sentence on the underlying conviction if an offender violates probation. As part of its decision, the court said: "Crimes are statutory, as are the penalties therefor, and the only sentence which a trial court may impose is that provided for by statute. A court has no power to substitute a different sentence for that provided for by statute or one that is either

greater or lesser than that provided for by law." *Id.* While true, the court's language allowed the *Beasley* court to support an analysis that the failure to follow a statutory mandate rendered a sentence void.

{¶ 22} For a while, despite *Colegrove* and *Beasley*, the court continued to use the traditional jurisdiction-based definition of a void judgment and recognize that sentences containing errors are voidable. *See Majoros v. Collins*, 64 Ohio St.3d 442, 443, 596 N.E.2d 1038 (1992); *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 27; *State ex rel. Shackleford v. Moore*, 116 Ohio St.3d 310, 2007-Ohio-6462, 878 N.E.2d 1035, ¶ 5. At the same time though, the distinction began to erode, beginning in cases involving improperly imposed postrelease control. In that line of cases, we held that a trial court's failure to fully comply with the statutory requirements related to postrelease control rendered the sentence void. *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23; *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 16. In *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, we declared that a court's failure to impose a sentence as required by law is an exception to the traditional jurisdiction-based definition of a void judgment; it falls within the "narrow vein of cases," *id.* at ¶ 14, in which sentences are declared void despite the sentencing court having jurisdiction over the case and defendant. *See id.* at ¶ 20-30. Then in *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, we held that "void sentences are not precluded from appellate review by principles of res judicata and may be reviewed at any time, on direct appeal or by collateral attack." *Id.* at ¶ 40. Although *Fischer* again limited its decision to the "discrete vein of cases" in which a court does not properly impose postrelease control, *id.* at ¶ 31, it nonetheless reiterated the new definition of a void sentence, stating that "a sentence that is not in accordance with statutorily mandated terms is void," *id.* at ¶ 8. The court intended to "provide a clear, simple, and more workable solution to a vexing issue without compromising the interests of fairness," *id.* at

¶ 40. But its modern, expansive definition of a void sentence, combined with its holding, had the exact opposite effect.

{¶ 23} Rather than follow our commitment to limit the modern definition of a void sentence to the discrete and narrow line of cases involving the imposition of postrelease control, we began applying the "same logic in *Fischer*," *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, ¶ 16, in a variety of cases involving sentencing errors. *See, e.g., Harris* at ¶ 16-18 (explicitly acknowledging that although *Fischer* was limited to postrelease control cases, the court would apply it to the failure to include a mandatory driver's-license suspension and declare the sentence void in part); *State v. Moore*, 135 Ohio St.3d 151, 2012-Ohio-5479, 985 N.E.2d 432, syllabus (failure to impose mandatory fine when no affidavit of indigency was filed rendered that part of the sentence void); *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 28 (imposition of separate sentences for allied offenses rendered the sentences void).

{¶ 24} The court's expansion of the void-sentence doctrine from the traditional understanding, to cases involving improper imposition of postrelease control, and finally to cases in which a court deviates from a statutory mandate has created the slippery slope that Justice Lanzinger foresaw in *In re J.S.*, 136 Ohio St.3d 8, 2013-Ohio-1721, 989 N.E.2d 978, ¶ 15 (Lanzinger, J., dissenting). She wrote:

> Because this court has equated judicial actions that are contrary to law or "not in accordance with statutorily mandated terms" to actions that are void, the number of judicial actions subject to collateral attack under this court's conception of what is void is limited only by the number of statutes mandating that a court act in a specific way and the creativity of the attorney challenging the court's action.

*Id.* at ¶ 18 (Lanzinger, J., dissenting), quoting *Fischer* at ¶ 8. Several other justices have expressed similar concerns about infinitely appealable judgments under the modern doctrine. *See, e.g.*, *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 69 (Kennedy, J., dissenting); *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 27 (French, J., concurring in judgment only) and ¶ 37 (DeWine, J., concurring in judgment only); *State v. Johnson*, 155 Ohio St.3d 441, 2018-Ohio-4957, 122 N.E.3d 126, ¶ 17 (DeGenaro, J., concurring in judgment only); *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 53 (Donnelly, J., concurring in judgment only).

{¶ 25} As Justice Lanzinger recognized, based on our modern void-sentence decisions, "[n]either the state nor defendants can be certain when judgments are final and when they are subject to collateral attack." *In re J.S.* at ¶ 16 (Lanzinger, J., dissenting). Even this court has struggled to determine when an erroneous decision is subject to collateral attack. *See Williams* at ¶ 60-62 (Lanzinger, J., dissenting) (reviewing this court's conflicting decisions on which errors result in void sentences). Similarly, our decisions have confused and frustrated appellate courts across the state. The Fourth District Court of Appeals felt compelled by our precedent to apply the modern void-sentence doctrine to a motion to withdraw a guilty plea filed eight years after the defendant was sentenced. *State v. Straley*, 2018-Ohio-3080, 107 N.E.3d 8 (4th Dist.). In doing so, the court expressed frustration about the expanded doctrine and the "absurdity" of the result its application created, *id.* at ¶ 34. Similarly, the Third District Court of Appeals lamented about the "mass confusion" that has resulted from this court's departure from the traditional understanding of what constitutes a void—versus voidable—sentence. *State v. Kegley*, 3d Dist. Crawford No. 3-18-03, 2018-Ohio-4167, ¶ 13. That court recognized that our "sloppiness has expanded the void-sentencing-error concept beyond postrelease-control cases to include other random

nonjurisdictional-sentencing errors." *Id.* at ¶ 14. The Tenth District Court of Appeals has declared that this court's extension of the void-sentence doctrine "threaten[s] to swallow the rule [on finality] and lead to a situation where virtually any allegedly serious error in sentencing can be revived time and time again without being foreclosed by res judicata." *State v. Steele*, 10th Dist. Franklin No. 18AP-187, 2018-Ohio-3950, ¶ 11, fn. 1. The Sixth District has bemoaned the " 'monstrosity of a problem' " this court's modern void-sentence jurisprudence has created. *State v. Mitchell*, 187 Ohio App.3d 315, 2010-Ohio-1766, 931 N.E.2d 1157, ¶ 28 (6th Dist.), quoting the appellant's argument. And other districts have struggled with deciding whether to apply the void-sentence doctrine to nonjurisdictional errors in light of our inconsistent precedent. *See In re J.S.*, 8th Dist. Cuyahoga No. 96637, 2011-Ohio-6280 (applying the void-sentence doctrine in the serious-youth-offender context); *State v. Covington*, 2d Dist. Clark No 2019-CA-50, 2020-Ohio-390 (reviewing the various applications of the doctrine before ultimately deciding that it did not apply to a collateral attack of an improper nonmandatory sentence); *State v. Grant*, 1st Dist. Hamilton No. C-120695, 2013-Ohio-3421, ¶ 17 (declining to declare sentence based on an allied-offenses error void because then the court would be "hard-pressed to identify any intellectually justifiable stopping point" in the doctrine's application). It is time to correct our error and return to a clear, traditional understanding of a void sentence.

### *State v. Harper* signals a return to the traditional view of a void sentence

{¶ 26} This court now recognizes that the modern void-sentence jurisprudence is unworkable and has created more problems than it has solved. In *State v. Harper*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___, we corrected the error in our postrelease-control cases and we "realign[ed] our precedent in cases involving the imposition of postrelease control with the traditional understanding of what constitutes a void judgment." *Id.* at ¶ 4. Now, under *Harper*, if a court has jurisdiction over the case and the defendant, any

sentence based on an error in the court's imposition of postrelease control is voidable. The sentence may be set aside only if it is successfully challenged on direct appeal. *Id.*

{¶ 27} *Harper* overruled our prior cases that conflicted with its holding, i.e., those cases in which we labeled as void sentences in which a trial court erred when imposing postrelease control. *Id.* at ¶ 40. But *Harper* did not involve a case in which a trial court deviated from a statutory mandate. Although *Harper* concluded that a sentence is void only when a sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused, *see id.* at ¶ 42, we are mindful that parties may still try to distinguish *Harper* from cases that do not involve the imposition of postrelease control. Today, we make it clear that sentences based on an error are voidable, if the court imposing the sentence has jurisdiction over the case and the defendant, including sentences in which a trial court fails to impose a statutorily mandated term. A sentence is void only if the sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused.

### Stare Decisis

{¶ 28} In returning to a traditional understanding of a void sentence, we are cognizant of the importance of respecting stare decisis. The doctrine of stare decisis generally compels a court to recognize and follow an established legal decision in subsequent cases in which the same question of law is at issue. *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 157 Ohio St.3d 164, 2019-Ohio-2851, 133 N.E.3d 482, ¶ 18, citing *Clark v. Snapper Power Equip., Inc.*, 21 Ohio St.3d 58, 60, 488 N.E.2d 138 (1986). It is a doctrine of policy that recognizes the value of continuity and predictability in our legal system. *Clark* at 60. It allows those individuals affected by the law to rely on its consistency. *Scott v. News-Herald*, 25 Ohio St.3d 243, 249, 496 N.E.2d 699 (1986); *see also Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d

1256, ¶ 43.  In *Galatis*, we laid out a test to help us consider the prudence of overruling our prior decisions.  We said that we must be willing to overrule our prior decisions when (1) the decisions were wrongly decided or circumstances no longer justify continued adherence to them, (2) the decisions defy practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it.  *Id.* at ¶ 48.

{¶ 29} But we have not applied the *Galatis* test in all cases in which we overrule a prior decision.  We have said that it applies when we consider overruling precedent on substantive law, *State v. Silverman*, 121 Ohio St.3d 581, 2009-Ohio-1576, 906 N.E.2d 427, ¶ 31, and that it is most helpful in cases involving contract, property, and tort principles, *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 35-37 (lead opinion).  In cases in which we overrule a prior decision regarding procedural rules, evidentiary rules or constitutional questions though, we have declared the *Galatis* analysis unnecessary.  *See, e.g.*, *Silverman* at ¶ 33 (the *Galatis* test does not apply in deciding whether to overrule precedent interpreting procedural and evidentiary rules, where there is little reliance interest); *Bodyke* at ¶ 37 (lead opinion) (the *Galatis* test is "not controlling" in cases that present a constitutional question); *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 45 (lead opinion), *abrogation on other grounds recognized in State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414 (the *Galatis* test is unnecessary in cases involving constitutional protections because stare decisis has less force when constitutional rights are implicated).  *But see State v. Williams*, 103 Ohio St.3d 112, 2004-Ohio-4747, 814 N.E.2d 818, ¶ 11, *superseded by statute as stated in State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, (applying the *Galatis* test and declining to overrule precedent).  And in some cases, we have simply overruled one of our prior decisions without mentioning the *Galatis* test at all.  *See, e.g.*, *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, at ¶ 36, *overruled on other grounds in State v.*

16

*Harper*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___; *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, ¶ 45.

{¶ 30} In short, we have been anything but consistent in applying the *Galatis* test, we are not compelled to apply it here, and we decline to apply it here. As we recognized in *Harper*, when adherence to our precedent is unfair and creates doubt and confusion over certainty, we are not constrained to follow that precedent. *Harper* at ¶ 38, citing *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994). Nevertheless, given the muddied history of our jurisprudence on void sentences, the sheer number of cases implicating the void-sentence doctrine, and the importance of stare decisis, some of the considerations we outlined in *Galatis* help to illustrate why we feel compelled to abandon our precedent in this area.

{¶ 31} This court, in 1854, defined a void judgment as a judgment rendered by a court that lacks jurisdiction. *See Sheldon's Lessee*, 3 Ohio St. 494. For over 100 years, this court was consistent in applying that definition, and that definition was predictable and workable. Our modern void-sentence jurisprudence deviated from that traditional definition and expanded our classification of a sentence as void to a nonjurisdictional context—whenever a trial court fails to comply with a statutory mandate. *See, e.g.*, *Fischer* at ¶ 8. The extension of the void-sentence doctrine in those cases is contrary to our historical practice and our longstanding precedent. They were wrongly decided.

{¶ 32} Our modern void-sentence jurisprudence has defied practical workability due to its inconsistent application in our court and in lower courts. *See Williams*, 2016-Ohio-7658, 148 Ohio St.3d 403, 71 N.E.3d 234, at ¶ 60-62 (Lanzinger, J., dissenting) (reviewing this court's conflicting decisions on which errors result in void sentences). The lower courts have bemoaned the difficulty in navigating our muddy jurisprudence as they try to determine whether to apply the modern doctrine to a particular judgment. *See Grimes*, 151 Ohio St.3d 19, 2017-

Ohio-2927, 85 N.E.3d 700, at ¶ 55-61 (DeWine, J., concurring in judgment only) (reviewing numerous lower-court decisions expressing frustration about our modern void-sentence jurisprudence and applying the *Galatis* analysis to support overruling our prior precedent). Rather than provide a clear, simple, workable standard, we have created uncertainty, inconsistency, frustration, and confusion. Despite our pronouncements that *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, *Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, and their progeny would remain limited to the discrete vein of postrelease-control cases, we have expanded application of those holdings to other sentencing errors. The multitude of issues with the modern void-sentence doctrine described by justices of this court, combined with the widespread criticism of our modern void-sentence jurisprudence emanating from the lower courts, shows that we have "created massive and widespread confusion—the antithesis of what a decision of this court should do," *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 50.

{¶ 33} Our decision today will remove that confusion. It will restore predictability and finality to trial-court judgments and criminal sentences.

{¶ 34} To that end, we realign our precedent with the traditional understanding of what constitutes a void judgment. When our prior cases conflict with this traditional understanding, we must overrule them. A judgment or sentence is void only if it is rendered by a court that lacks subject-matter jurisdiction over the case or personal jurisdiction over the defendant. If the court has jurisdiction over the case and the person, any error in the court's exercise of that jurisdiction is voidable.

{¶ 35} Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a case. *Harper*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___, at ¶ 23; *Smith v. May*, 159 Ohio St.3d 106, 2020-Ohio-61, 148 N.E.3d 542, ¶ 37. It is the court's power to hear a case and render a sentence.

*See State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998). Through the power vested in it by Article IV, Section 4(B), of the Ohio Constitution, the General Assembly has given the common pleas courts original jurisdiction over "all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas." R.C. 2931.03. This includes subject-matter jurisdiction over felony cases. *Smith v. Sheldon*, 157 Ohio St.3d 1, 2019-Ohio-1677, 131 N.E.3d 1, ¶ 8.

{¶ 36} Personal jurisdiction refers to the court's power to render a valid judgment against a particular individual. In a criminal matter, the court acquires jurisdiction over a person by lawfully issued process, followed by the arrest and arraignment of the accused and his plea to the charge. *Tari*, 117 Ohio St. at 490, 159 N.E. 594. A defendant also submits to the court's jurisdiction if he does not object to the court's exercise of jurisdiction over him. *Id*. at 491.

{¶ 37} If the court has jurisdiction over the case and the person, any sentence or judgment based on an error in the court's exercise of that jurisdiction is voidable.

{¶ 38} Having returned to the traditional, narrow, and accurate view of void judgments as those being rendered by a court without jurisdiction, we now apply that doctrine to the case before us.

**The state cannot challenge Henderson's sentence through a postconviction motion**

{¶ 39} Here, the trial court stated that it was sentencing Henderson to "15 years" during the sentencing hearing. It did not say that it was sentencing him to an indefinite sentence that included a life tail. Likewise, in its sentencing entry, the court indicated only that it sentenced Henderson to a 15-year sentence. A trial court speaks through its journal entry. *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 15. And here, that entry indicated that Henderson was sentenced to a definite 15-year term.

{¶ 40} There is no dispute that the trial court's sentence was unlawful. Former R.C. 2929.02(B), Am.Sub.S.B. No. 107, 157 Ohio Laws, Part IV, 7435, required that Henderson receive an indefinite sentence of 15 years to life, and the court failed to impose that sentence. The state had a full and fair opportunity to object to or challenge the trial court's sentence. It did not. In fact, it did not seek to correct the error for almost 12 years, and it then waited 6 more years before filing the motion at issue in this appeal. Because the sentencing error rendered the sentence voidable, the state's attempt to correct the error in a postconviction motion for resentencing was improper.

**R.C. 5145.01 cannot transform a definite sentence imposed by a trial court by adding an indefinite tail to that sentence**

{¶ 41} As a final matter, we address the argument that R.C. 5145.01 automatically transforms Henderson's sentence to conform to what the legislature intended—an indefinite sentence. Because of this, the state argues, we need not need consider whether Henderson's sentence is void. We disagree. That statute cannot operate with the power the state ascribes to it.

{¶ 42} R.C. 5145.01 states, in part:

> If, through oversight or otherwise, a person is sentenced to a state correctional institution under a definite term for an offense for which a definite term of imprisonment is not provided by statute, the sentence shall not thereby become void, but the person shall be subject to the liabilities of such sections and receive the benefits thereof, as if the person had been sentenced in the manner required by this section.

The statute is in R.C. Chapter 5145, which governs the administration of state correctional institutions. *See State ex rel. McKee v. Cooper*, 40 Ohio St.2d 65, 71,

320 N.E.2d 286 (1974). The statute cannot be read to give correctional institutions the power to transform a sentence from what the sentencing entry expressly contains. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). The separation-of-powers doctrine prohibits the executive branch of government from overriding a court's judgment about what the law requires in a particular case—even if the court errs in its judgment and even if the error was fairly obvious. But that is exactly what the state's interpretation of R.C. 5145.01 would require. It would allow the Bureau of Sentence Computation to ignore the definite term provided in the trial court's original sentencing entry and replace it, on its own, with a new indefinite term. And although the legislature vests the judiciary with the power to sentence, even it cannot enact laws that allow the executive branch to override a judicial determination of what the law requires in a particular case. *Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, at ¶ 55. " '[T]he legislature cannot annul, reverse, or modify a judgment' " that a court has already entered. *Id*. at ¶ 56, quoting *Bartlett v. State*, 73 Ohio St. 54, 58, 75 N.E. 939 (1905). And it cannot create a scheme that gives the executive branch authority to review court judgments. *Id*. at ¶ 55.

## CONCLUSION

{¶ 43} Our decision today restores the traditional understanding of what constitutes a void sentence. A judgment or sentence is void only if it is rendered by a court that lacks subject-matter jurisdiction over the case or personal jurisdiction over the defendant. If the court has jurisdiction over the case and the person, any sentence based on an error in the court's exercise of that jurisdiction is voidable. Neither the state nor the defendant can challenge the voidable sentence through a postconviction motion.

{¶ 44} The state cannot seek to correct Henderson's unlawful sentence through a postconviction motion filed 18 years after the sentence was entered. The

trial court originally sentenced Henderson to a definite 15-year sentence, plus an additional three years for a firearm specification. That is the sentence we enforce today. We reverse the decision by the court of appeals, vacate the sentencing entry issued by the trial court on September 20, 2017, and remand this case to the trial court to reinstate its original sentence. In doing so, we clarify that our decision reverses only that part of the Eighth District's judgment that is before us on appeal—whether the trial court properly granted the state's motion for resentencing. The Eighth District also reversed the trial court's decision on Henderson's motion for additional jail-time credit and awarded Henderson a total of 71 days of jail-time credit. The state did not appeal that part of the judgment, and our decision today does not affect it.

Judgment reversed in part

and cause remanded.

FISCHER and DEWINE, JJ., concur.

O'CONNOR, C.J., concurs in judgment only, with an opinion.

KENNEDY, J., concurs in judgment only, with an opinion.

DONNELLY, J., concurs, with an opinion.

STEWART, J., concurs in judgment only.

––––––––––––––––––

**O'CONNOR, C.J., concurring in judgment only.**

{¶ 45} The majority opinion's decision to return to what it calls a "traditional" view of void judgments, despite decades of precedent to the contrary, is presented to the reader as though it will provide immediate clarity to our jurisprudence in this area. *See also State v. Harper*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d. ___. But, in truth, today's decision simply takes our case law back to the starting line. The substantial concerns that this court's void-sentence

jurisprudence addressed will not disappear.[2]   Those concerns are particularly evident in the postrelease-control context, in which a sentencing error may not reveal itself until the time for appeal has passed, and in cases in which a defendant does not suffer prejudice from a sentencing error until years after the time for direct appeal has passed.  *See, e.g.*, *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 33, *overruled on other grounds in State v. Harper*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___; *State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960.  Of course, this case does not present that scenario.  I would find that the state is not entitled to the resentencing it seeks, because appellant, Rogers T. Henderson, has completed his sentence.  For that reason, I concur in judgment only.

---

2. The court explained in *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 20-21, *overruled on other grounds in State v. Harper*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___, why it had departed from the prior, limited view of void judgments:

> But in the modern era, in which we have a more sophisticated understanding of individual rights, we have not so severely limited the notion of void judgments to only those judgments that arise from jurisdictional cases.  *See, e.g.*, *State v. Foster*, 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470, ¶ 103-104.  The historic, narrow view does not adequately address the constitutional infirmities of a sentence imposed without statutory authority.

> The majority's decision to include sentences that disregard legislatively imposed mandates within a narrow class of void judgments reflects a fundamental understanding of constitutional democracy: judges are not imperial.  We recognize that our authority to sentence in criminal cases is limited by the people through the Ohio Constitution and by our legislators through the Revised Code.

**{¶ 46}** In her dissenting opinion ten years ago, Justice Lanzinger noted, "The real question here is: 'What is the proper remedy when a judge makes a sentencing mistake?' " *Fischer* at ¶ 53 (Lanzinger, J., dissenting). In support of a voidable-sentence doctrine, to which today's majority now aligns, she explained:

> Licensed attorneys should be competent to perform their duties during a sentencing hearing, and it is not unreasonable for prosecutors and defense counsel to review the judgment issued in a case to ensure that the sentence complies with Ohio law. *This* approach is the pragmatic approach—equitable, economical, and efficient.

(Emphasis sic.) *Id.*

**{¶ 47}** As this case demonstrates, however, mistakes happen. And, in other cases, sentencing mistakes are not revealed until after the time for direct appeal has passed. For these types of cases in particular, the question Justice Lanzinger raised in *Fischer* still remains: what is the proper remedy?

**{¶ 48}** I fear that the court's eagerness to overturn our void jurisprudence for what it may view as an easier or more "pragmatic approach" (as Justice Lanzinger described it) will leave certain sentencing errors without a remedy. Those errors will certainly be felt more acutely by defendants who rely largely on counsel to interpret complex sentencing statutes and for whom unwarranted time incarcerated or under state supervision will result. Will the court recognize a habeas petition for these errors or for clearly unlawful sentencing? *See, e.g.*, *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, *superseded by statute as stated in State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958; *In re Bonner*, 151 U.S. 242, 14 S.Ct. 323, 38 L.Ed. 149 (1894). Will the court allow the reopening of an appeal for a claim of

ineffective assistance of counsel in sentencing? How broadly will it apply the doctrine of res judicata to bar a claim? *See, e.g., State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, 137 N.E.3d 1151, ¶ 36. In sum, will the courts take a fair and thoughtful approach to solving the difficult questions that arise from sentencing errors challenged after the time for direct appeal has passed or will they use res judicata and the void-sentence doctrine as an excuse to keep the courthouse doors closed? Will courts elevate predictability and finality over fairness and substantial justice?

{¶ 49} This court's void-sentence jurisprudence was correct. As I wrote for the majority in *Fischer*, "Although the interests in finality of a sentence are important, they cannot trump the interests of justice, which require a judge to follow the letter of the law in sentencing a defendant." 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 33, at ¶ 23. And the res judicata doctrine is to be applied as a shield against repeated litigation of an issue, but " 'is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice,' " *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 25, quoting 46 American Jurisprudence 2d, Judgments, Section 522, at 786-787 (1994).

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 50} Because the majority does not apply our binding precedent in *State v. Harper*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___, to resolve this case, I concur in judgment only. The majority purports to distinguish *Harper* from the case before us today on the basis that *Harper*'s holding is limited to cases involving the failure to properly impose a statutorily mandated term of postrelease control, while this case involves the failure to impose a different statutorily mandated term in the sentence, a "life tail."

{¶ 51} Taking the majority's distinction to its logical conclusion would mean that our void-sentence jurisprudence could be overruled only on a piecemeal

basis when a specific statutorily mandated term is squarely before the court. Under that reasoning, the court's decision today could apply only to life-tail cases, while caselaw holding that a sentence is void if it lacks other statutorily mandated terms— e.g., a mandatory prison term, a mandatory driver's-license suspension, or a mandatory fine—could not yet be overturned and would remain binding on inferior courts. But that is not how precedent works, and courts could not function if we approached each decision as a blank slate presenting a question of first impression.

{¶ 52} All of the cases composing our void-sentence jurisprudence expressed the same fundamental principle that the failure to impose a statutorily mandated term in the sentence rendered that sentence void. In rejecting that principle in *Harper*, this court overturned our void-sentence jurisprudence in its entirety as it applies to the failure to impose statutorily mandated terms in the sentence. And applying *Harper* here, the trial court's failure to impose a life tail as required by statute rendered the sentence voidable, not void ab initio.

### Void or Voidable

{¶ 53} In Ohio, judges have no inherent authority to establish the penalty for committing a crime. *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 10. The power to define criminal offenses and prescribe punishment is vested in the General Assembly, and courts may impose sentences only as provided by statute. *See id.* To secure the boundary between these judicial and legislative functions, we adopted our void-sentence jurisprudence, holding that "[a]ny attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void," *State v. Beasley*, 14 Ohio St.3d 74, 75, 471 N.E.2d 774 (1984).

{¶ 54} *Beasley* was the fountainhead of our jurisprudence that a sentence is void when the trial court fails to impose a statutorily mandated term in the sentence. In that case, the offender had been found guilty of two counts of felonious assault. The sentencing statute mandated the imposition of a 2-to-15-year prison term for

that offense, but the trial court imposed a fine only. We held that the trial court's failure to impose the statutorily mandated prison term in the sentence rendered the sentence void and subject to correction by the trial court. *Beasley* at 75.

{¶ 55} *Beasley* initially remained an outlier. It ran counter to the well-established "traditional" rule that a sentence is void when the sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused; but when the sentencing court has jurisdiction to act, a sentencing error made in the exercise of that jurisdiction renders the court's sentence voidable, not void. *See State v. Perry*, 10 Ohio St.2d 175, 178, 226 N.E.2d 104 (1967); *In re Winslow*, 91 Ohio St. 328, 330, 110 N.E. 539 (1915); *Ex parte Van Hagan*, 25 Ohio St. 426, 432 (1874); *Ex parte Shaw*, 7 Ohio St. 81, 82 (1857).

{¶ 56} *Beasley* and our void-sentence jurisprudence gained new life 20 years later in *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864. In *Jordan*, we extended our void-sentence jurisprudence by applying the holding in *Beasley* to remedy a trial court's failure to properly impose a statutorily mandated term of postrelease control. *Id.* at ¶ 23. Following *Beasley*, we explained that "[t]he court's duty to include a notice to the offender about postrelease control at the sentencing hearing is the same as any other statutorily mandated term of a sentence." *Id.* at ¶ 26.

{¶ 57} *Jordan* gave rise to a line of cases seeking to untangle the consequences of the trial court's failure to properly impose a statutorily mandated term of postrelease control. *E.g.*, *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 28; *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 16; *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 6; *State v. Boswell*, 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422, ¶ 8. But rather than distinguishing *Beasley* on the basis that it involved a statutorily mandated term of imprisonment rather than postrelease control, *Jordan*'s progeny invariably began the analysis with *Beasley*.

*E.g.*, *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 3; *Singleton* at ¶ 12.

{¶ 58} Soon, a growing swell of offenders began asserting that our void-sentence jurisprudence entitled them to de novo sentencing hearings, followed by new direct appeals allowing them to relitigate the merits of their convictions.

{¶ 59} We sought to limit our void-sentence jurisprudence in *State v. Fischer*, clarifying that although a sentence that does not include a properly imposed term of postrelease control is void in part, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, paragraph one of the syllabus, the "determination of guilt and the lawful elements of the [original] sentence" were nonetheless valid and remained subject to res judicata, *id.* at paragraph three of the syllabus. In rolling back our void-sentence jurisprudence, we proclaimed that it was "limited to a discrete vein of cases: those in which a court does not properly impose a statutorily mandated period of postrelease control." *Id.* at ¶ 31. And because the General Assembly had enacted R.C. 2929.191 in 2006 to provide a statutory remedy for correcting an error in imposing postrelease control, we said that "it is likely that our work in this regard is drawing to a close, at least for purposes of void sentences." *Fischer* at ¶ 31; *see Singleton* at paragraph two of the syllabus ("For criminal sentences imposed on and after July 11, 2006, in which a trial court failed to properly impose postrelease control, trial courts shall apply the procedures set forth in R.C. 2929.191").

{¶ 60} The hope that our void-sentence jurisprudence neared obsolescence proved short-lived. We continued to permit collateral attacks on "void" sentences imposed on or after the effective date of R.C. 2929.191, discovering new ways in which the trial courts failed to properly impose a statutorily mandated term of postrelease control. *See, e.g.*, *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 2 (sentence entered in 2011); *State v. Johnson*, 155 Ohio St.3d 441, 2018-Ohio-4957, 122 N.E.3d 126, ¶ 2 (sentence entered in 2013).

{¶ 61} And rather than limit our void-sentence doctrine to a discrete vein of cases, we extended it to encompass the failure to impose other statutorily mandated terms, such as the failure to include a mandatory driver's-license suspension in the sentence, *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, paragraph one of the syllabus, and the failure to impose a mandatory fine, *State v. Moore*, 135 Ohio St.3d 151, 2012-Ohio-5479, 985 N.E.2d 432, syllabus. We expanded this jurisprudence further when we held that the trial court's failure to comply with the statutory duty to merge allied offenses of similar import resulted in a void sentence. *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 28.

{¶ 62} Respecting the principle of stare decisis, I had joined prior cases applying our void-sentence jurisprudence. *E.g.*, *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 68. However, I drew the line in *Williams*, explaining that the allied-offenses statute, R.C. 2941.25(A), had codified the double-jeopardy protection against multiple punishments for the same offense. *Id.* at ¶ 89 (Kennedy, J., dissenting). That protection, as we had recognized in prior cases, could be forfeited if the accused did not object either before conviction or on direct appeal, and an error in failing to merge allied offenses of similar import could not be asserted in postconviction proceedings. *See id.* at ¶ 89-90. Overlaying our void-sentence jurisprudence conflicted with this precedent, and I concluded that

> [b]y expanding the void-sentence doctrine beyond postrelease-control cases and cases in which the trial court abridges the sentencing commands of the General Assembly, this decision will spawn a new wave of void-sentence litigation and severely undermine res judicata, which "promotes the principles of finality and judicial economy by preventing endless relitigation of an issue

on which a defendant has already received a full and fair opportunity
to be heard."

*Id*. at ¶ 95 (Kennedy, J., dissenting), quoting *State v. Saxon,* 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 18.

{¶ **63**} In the end, this court extended our void-sentence jurisprudence to apply to all cases involving sentencing errors that occurred when the trial court disregarded a mandatory-sentencing provision. Although these cases involved different statutory mandates, the reasoning undergirding the decisions remained the same: substituting a different sentence for the one mandated by statute rendered the sentence—or part of the sentence—void and subject to correction at any time before the expiration of the original sentence, whether that statutorily mandated term was imprisonment as in *Beasley*, a term of postrelease control as in *Jordan*, or a mandatory fine as in *Moore*.

### *State v. Harper*

{¶ **64**} In *Harper*, we confronted the legacy of our void-sentence jurisprudence, which had extended far beyond a "discrete vein of cases," spawned "seemingly endless litigation," and undermined the finality of criminal judgments. ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___, at ¶ 3, 34, 37, 39. And we pointed out that "[n]either *Beasley* nor *Jordan* nor their progeny have persuasively explained why a sentencing error implicating the separation-of-powers doctrine renders any part of the sentence void ab initio, as we have long recognized that other failures to comply with statutory mandates make a sentence merely voidable, not void." *Id*. at ¶ 35.

{¶ **65**} Basing the void-sentence jurisprudence on the separation-of-powers doctrine could not pay its own way. In other cases, we had held that constitutional errors other than separation-of-powers violations, including those involving the fundamental rights of the accused, did not render the resulting judgment void ab

initio.  For example, we had recognized that the violation of an accused's right to a jury trial based on improper judicial fact-finding at sentencing results in a voidable sentence.  *State v. Silsby*, 119 Ohio St.3d 370, 2008-Ohio-3834, 894 N.E.2d 667, ¶ 20, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 1.  We had decided that a judgment of conviction is not void even though the accused's due-process right to trial before an impartial judge was violated.  *Tari v. State*, 117 Ohio St. 481, 493-497, 159 N.E. 594 (1927).  Further, we have suggested that even structural errors—constitutional errors so affecting the framework of the trial that they are subject to automatic reversal, *see State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9—may be forfeited by failing to object to the error at trial, *see State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 24; *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 17-18, 23; *see also Weaver v. Massachusetts*, ___ U.S. ___, 137 S.Ct. 1899, 1910-1913, 198 L.Ed.2d 420 (2017) (holding that when a structural error is raised in the context of an ineffective-assistance-of-counsel claim, the error is not automatically reversible and the defendant is required to demonstrate prejudice to obtain a new trial).

**{¶ 66}** In *Harper*, we determined that adhering to our void-sentence jurisprudence "excepts a narrow class of our cases from established, fundamental principles of law without providing any sound basis for departing from those principles," *Harper* at ¶ 39, and therefore we "realigned our jurisprudence with the traditional understanding of void and voidable sentences," *id.* at ¶ 43.  And we held:

> A sentence is void when a sentencing court lacks jurisdiction over the subject-matter of the case or personal jurisdiction over the accused.  When the sentencing court has jurisdiction to act, sentencing errors in the imposition of postrelease control render the

sentence voidable, not void, and the sentence may be set aside if successfully challenged on direct appeal.

*Id*. at ¶ 42.

{¶ 67} *Harper* put an end to this court's "void-voidable" debate by definitively holding that a sentencing error based on a failure to impose a statutorily mandated term renders the sentence voidable, not void. *Id.*

### *Harper* Controls the Disposition of Henderson's Appeal

{¶ 68} In support of his first proposition of law, Henderson asks the court to apply our void-sentence jurisprudence to the trial court's failure to impose the life-tail portion of the sentence required by former R.C. 2929.02(B), Am.Sub.S.B. No. 107, 157 Ohio Laws, Part IV, 7435. He directly analogizes the trial court's failure to impose the life tail to a failure to properly impose postrelease control. In response, the state agrees that the sentence is void because the trial court failed to impose a statutorily mandated term of imprisonment in the sentence, but it contends that the sentence is still subject to correction.

{¶ 69} The parties did not have the benefit of *Harper* in preparing their briefs, but it provides the rule of decision that controls this case's disposition: when the sentencing court has jurisdiction to act, a sentencing error based on a failure to impose a statutorily mandated term renders the sentence voidable, not void, and the sentence may be set aside if successfully challenged on direct appeal.

{¶ 70} For this reason, the majority's attempt to distinguish *Harper* rather than apply it misses the mark. Its suggestion that *Harper* is not on point because it "did not involve a case in which a trial court deviated from a statutory mandate," majority opinion at ¶ 27, is wrong on its face. The very premise of the void-sentence jurisprudence was that the trial court's failure to impose a *statutorily mandated* term in the sentence rendered the sentence void, and postrelease control is a *statutorily mandated* term that must be included in the sentence. *Jordan*, 104

Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at ¶ 23; *Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, at ¶ 11; *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, at ¶ 26 ("when a judge fails to impose statutorily mandated postrelease control as part of a defendant's sentence, that *part* of the sentence is void and must be set aside" [emphasis sic]). The parties do not dispute that like postrelease control, the life tail was a statutorily mandated term of Henderson's sentence.

{¶ 71} And the majority's concern that the parties may try to distinguish *Harper* in future cases that do not involve the failure to properly impose postrelease control is unfounded. *Harper* spoke in terms of postrelease control, but that was the factual context of the decision, and our opinions are to be read in light of the facts of the case before us. *See United States v. Weaver*, 808 F.3d 26, 36 (D.C.Cir.2015), citing *Phelps v. United States*, 421 U.S. 330, 333-334, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). Cases rarely share identical facts, just as none of the cases composing our void-sentence jurisprudence involved a trial court failing to impose a life tail required by statute.

{¶ 72} But we do not review each case on a blank slate, because "the reasoning of our decision generates a principle of law, the application of which extends beyond the factual circumstances of [the] appeal," *United States v. Johnson*, 921 F.3d 991, 1003 (11th Cir.2019). It is that reasoning that creates precedent, and in *Harper* we definitively abandoned our void-sentence jurisprudence and held that "[a] sentence is void when a sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused." ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___, at ¶ 42. Inherent in that holding is the reasoning we marshaled to support it: a trial court's failure to impose a statutorily mandated term involves an error in the exercise of jurisdiction, not the absence of it, and that error is voidable on appeal, not void ab initio. *See id.*

And the need to police the separation of powers did not justify maintaining an exception to the traditional understanding of void and voidable sentences.

{¶ 73} If the reasoning of the majority were followed, then we would have to wait for a case presenting an issue regarding each and every separate statutorily mandated term to come before the court before we could finally lay to rest all of our void jurisprudence. Rather than treating this case as presenting a question of first impression, I would simply apply the principle of law generated by *Harper* to the facts of this case.

### The State's Challenge to Henderson's Sentence Is Time-Barred

{¶ 74} Henderson was indicted for aggravated murder. The common pleas court was the proper forum for trial of this offense, and no one disputes that the common pleas court acquired personal jurisdiction over Henderson. *See* Article IV, Section 4(B), Ohio Constitution; R.C. 2931.03; *State v. Hudson*, ___ Ohio St. 3d ___, 2020-Ohio-3849, ___ N.E.3d ___, ¶ 15; *Harper* at ¶ 23. Accordingly, any error in sentencing Henderson—including the error in failing to impose a statutorily mandated life tail—rendered his judgment of conviction voidable, not void ab initio.

{¶ 75} The majority correctly decides that R.C. 5145.01 would implicate the separation-of-powers doctrine if we construed it to permit the executive branch to reopen and modify a final judgment. *See State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 53 (courts "condemn legislative encroachments that violate the separation of powers by vesting officials in the executive branch with the power to review judicial decisions or by commanding that the courts reopen final judgments"). "[P]reserving the judiciary's exclusive authority to impose sentences is an area in which it is important for courts to be vigilant." *United States v. Morin*, 832 F.3d 513, 518 (5th Cir. 2016).

{¶ 76} I also agree that "the state cannot challenge Henderson's voidable sentence through a postconviction motion for resentencing," majority opinion at

¶ 1. Just as the legislative and executive branches do not have the power to reopen a final judgment, this court has explained that " 'trial courts lack authority to reconsider their own valid final judgments in criminal cases,' " *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 20, quoting *State ex rel. White v. Junkin,* 80 Ohio St.3d 335, 338, 686 N.E.2d 267 (1997).

{¶ 77} And although we have stated that "trial courts retain continuing jurisdiction to correct a void sentence and to correct a clerical error in a judgment," *id.*, neither of those exceptions to the general rule applies here. As explained above, the sentence the trial court imposed is not void ab initio. Also, the trial court did not impose the life tail at the sentencing hearing, so it could not correct the sentencing entry using a nunc pro tunc order. *See State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 (1995) ("*nunc pro tunc* entries are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide"). The trial court therefore had no jurisdiction to reconsider the sentence it imposed in this case.

{¶ 78} That does not mean that the state is without remedy to correct an unlawful sentence. First and foremost, the prosecutor has the right to attend the sentencing hearing and object if the trial court imposes a sentence that is contrary to law. *State v. Heinz,* 146 Ohio St.3d 374, 2016-Ohio-2814, 56 N.E.3d 965, ¶ 23 (explaining that the prosecuting attorney represents the state in criminal proceedings and "is entitled to proper notice and an opportunity to appear and be heard").

{¶ 79} Second, R.C. 2945.67(A) permits the prosecutor to seek leave to appeal a sentence that disregards statutory sentencing requirements or lacks a statutorily mandated term. *State ex rel. Zoller v. Talbert*, 62 Ohio St.2d 329, 329, 405 N.E.2d 724 (1980) ("R.C. 2945.67(A) provides a plain and adequate remedy at law to correct errors in sentencing," including the failure to impose a statutorily mandated driver's-license suspension); *see also State v. Hancock*, 108 Ohio St.3d

57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 118 (R.C. 2945.67 allowed state's appeal of the trial court's decision granting a mistrial in penalty phase of trial and imposing a life sentence on the accused).  And if the court of appeals denies leave to appeal, then the state may seek review in this court.  *See State ex rel. O'Malley v. Collier-Williams*, 153 Ohio St.3d 553, 2018-Ohio-3154, 108 N.E.3d 1082, ¶ 14, citing S.Ct.Prac.R. 5.02 (jurisdictional appeals); *State ex rel. Corrigan v. Lawther*, 39 Ohio St.3d 157, 158, 529 N.E.2d 1377 (1988) (explaining that R.C. 2953.14 allows the state to appeal the denial of leave to appeal to this court).

**{¶ 80}** But what the state may not do is move to correct an unlawful sentence 18 years after that sentence was journalized.  Rather, as the court explained in *Harper*, the trial court's failure to impose a statutorily mandated term in the sentence "is best remedied the same way as other trial and sentencing errors— through timely objections at sentencing and an appeal of the sentence," *id.*, ___ Ohio St.3d ___, 2020-Ohio-2913, ___ N.E.3d ___, at ¶ 40.

### The *Galatis* Test Does Not Apply in Criminal Cases

**{¶ 81}** As explained above, *Harper* abrogated our void-judgment jurisprudence.  Because those cases are no longer good law, there is no need to decide whether the test for overruling precedent set forth in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus, applies in this case.  The majority nonetheless concludes that although we are "not compelled" to apply the *Galatis* test, "given the muddied history of our jurisprudence on void sentences, the sheer number of cases implicating the void-sentence doctrine, and the importance of stare decisis, some of the considerations we outlined in *Galatis* help to illustrate why we feel compelled to abandon our precedent in this area."  Majority opinion at ¶ 30.  Rather than applying *Galatis* or its principles, I would hold that there is no binding test for overruling precedent in criminal cases.

**{¶ 82}** In *Galatis*, the court adopted a three-pronged test for determining whether to overrule prior precedent: "A prior decision of the [Ohio] Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." *Galatis* at paragraph one of the syllabus.

**{¶ 83}** We adopted the *Galatis* test in the context of civil litigation involving the interpretation of insurance policies, and we are obliged to limit our holding to other cases that reflect a similar constellation of law and facts. *See Cohens v. Virginia*, 19 U.S. 264, 399, 5 L.Ed. 257 (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used"); *Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, at ¶ 12 ("we are not bound by any perceived implications that may have been inferred from" a prior decision).

**{¶ 84}** After deciding *Galatis*, it did not take this court long to limit the reach of that test. We did not apply it when we reviewed legislation similar to prior statutes that we had struck down as unconstitutional. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 23, 93. We held that the *Galatis* test did not apply in deciding whether to overrule precedent interpreting procedural and evidentiary rules. *State v. Silverman*, 121 Ohio St.3d 581, 2009-Ohio-1576, 906 N.E.2d 427, ¶ 33. Then, approximately one year later, this court decided *Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753. The lead opinion in *Bodyke* explained that *Galatis* arose in the context of insurance and contract law, *Bodyke* at ¶ 35, and suggested that the three-pronged test applies "in cases presenting questions on the law of contracts, property, and torts, but it is not controlling in cases presenting a constitutional question," *id*. at ¶ 37.

{¶ 85} Moreover, we have previously overruled criminal-law precedent "with nary a mention of *Galatis*." *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, ¶ 69 (Pfeifer, J., dissenting). We did not employ the *Galatis* test in *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, at ¶ 36, in which this court overruled the part of the holding in *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, that requires a de novo sentencing hearing to correct a trial court's failure to impose a statutorily mandated term of postrelease control. And that case is not an outlier. We also did not mention *Galatis* in *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, ¶ 45, when we overruled *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, and overruled in part *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, regarding the sufficiency of an indictment when it fails to allege a culpable mental state. Nor did the lead opinion or any of the separate opinions in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, *abrogation recognized by State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414, rely on *Galatis* in overturning the test from *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), for identifying allied offenses of similar import. Most recently, we overruled the test from *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, ¶ 18, 21, for determining whether an offender is intellectually disabled without applying *Galatis*. *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 100.

{¶ 86} The protection of individual liberty, which is at stake in a criminal proceeding, should never depend on a party's ability to prove that the three prongs of the *Galatis* test have been met. We should not uphold a wrongly decided case simply because a criminal defendant is unable to establish that an erroneous holding has become unworkable and no one (or some undefined number of people) has relied on it. Our precedent in criminal cases can chill the behavior of law-abiding Ohioans while sometimes literally rising to a matter of life or death. If a decision

38

in a criminal case is wrong, it should be overruled without resort to a binding test. Instead, deciding the workability of criminal law in light of the people's reliance on it is the prerogative of the legislative branch of government.

{¶ 87} Accordingly, I would not apply the *Galatis* test—or any variant of it—in deciding whether to overrule our decisions in criminal cases.

## Conclusion

{¶ 88} For the reasons set forth above, I concur in the court's judgment to reverse the court of appeals and agree that the sentence entered in 1999 must be reinstated.

––––––––––––––––––

**DONNELLY, J., concurring.**

{¶ 89} I concur in the majority's judgment and agree with its determination that the state cannot challenge Henderson's voidable sentence through a postconviction motion for resentencing.

{¶ 90} I write separately to note that the majority reaches its decision without expressly applying the doctrine of res judicata against the state for its failure to file a direct appeal from the trial court's sentencing error. Of course, declaring that Henderson's sentence was "voidable" necessarily implies that it was capable of being voided, i.e., corrected, by means of an available legal process. A direct appeal is the available legal process to address a trial court's alleged sentencing error, and the failure to challenge a sentencing error on direct appeal operates as res judicata to any later collateral attack on the judgment. *See State v. Harper*, ___Ohio St.3d___, 2020-Ohio-2913, ___N.E.3d___, ¶ 41 (because Harper failed to raise alleged postrelease-control sentencing error on direct appeal, the argument was barred by doctrine of res judicata).

{¶ 91} Regardless of whether res judicata is implicit in today's decision, I agree with the majority that "[n]either the state nor the defendant can challenge the voidable sentence through a postconviction motion," majority opinion at ¶ 43.

Nothing said in today's decision should cause anyone to doubt that res judicata applies equally to the state and the defendant. *See Harper* at ¶ 43 (cautioning prosecuting attorneys, defense counsel, and pro se defendants throughout the state that they are now "on notice" that claims of postrelease-control sentencing errors "must be brought on appeal from the judgment of conviction or the sentence will be subject to res judicata"); *see also State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 53 (Donnelly, J., concurring in judgment only).

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Ochocki, Assistant Prosecuting Attorney, for appellee.

Mark A. Stanton, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, for appellant.

_____