[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Brasher*, Slip Opinion No. 2022-Ohio-4703.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4703

THE STATE OF OHIO ET AL., APPELLANTS, *v.* BRASHER, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Brasher*, Slip Opinion No. 2022-Ohio-4703.]

*Criminal law—Marsy's Law—Restitution—Writ of mandamus is not appropriate remedy for crime victim to challenge trial court's denial of restitution— Victims should have used direct appeal to challenge trial court's sentence because they developed standing to appeal when trial court denied their request to impose restitution—Court of appeals' judgment affirmed.*

(No. 2021-1060—Submitted June 14, 2022—Decided December 28, 2022.)

APPEAL from the Court of Appeals for Butler County,

No. CA2020-08-094, 2021-Ohio-1688.

_____

**BRUNNER, J., announcing the judgment of the court.**

## I.  INTRODUCTION

{¶ 1} Appellee, Kyle Brasher, stole the victims' car and totaled it.[1]  The victims held a right to restitution under Marsy's Law.  Ohio Constitution, Article I, Section 10a(A)(7).  Yet the victims and the state did not argue for restitution before the trial court, and the victims did not appeal the trial court's denial of restitution. The question raised before this court is whether the victims should have appealed the portion of Brasher's sentence denying restitution or whether they had the right to collaterally attack the trial court's judgment sentencing Brasher by seeking an extraordinary writ for a restitution order—in this case, after the sentencing court's judgment was final and Brasher's sentence had been completed.

{¶ 2} The victims should have appealed the trial court's failure to award restitution, because they developed standing to appeal when the trial court denied their request to impose restitution.  While it is clear that these victims should be compensated for the loss of their stolen vehicle, they did not act to protect their right to restitution when they did not appeal the portion of Brasher's sentence denying restitution.  This court affirms the judgment of the Twelfth District Court of Appeals reversing the trial court's later granting of restitution after the trial court had lost jurisdiction in Brasher's case.

## II.  FACTS AND PROCEDURAL HISTORY

{¶ 3} On September 17, 2018, Brasher pled guilty to grand theft of a motor vehicle.  On October 16, 2018, the trial court held a sentencing hearing.  Brasher, his mother, his attorney, and the prosecutor were present and indicated that they were ready to proceed.  The victims were apparently not present, and the state declined an opportunity to be heard.  While sentencing Brasher, the court remarked

---

1. The victims in this case were husband and wife, Deborah Howery and Lawrence Hammon.  For ease of reference, we generally will refer to Howery and Hammon collectively as "the victims," except where it is necessary to single out their individual actions.

about economic harm to the victims and their desire for restitution, but it then noted that restitution had not been proved or shown to any specific degree:

> [Y]ou took somebody's car. It's been pretty devastating for him. The guy lost a couple days' work. He hasn't been able to get a replacement car. It puts him and his wife in a very severe disadvantage. They don't have the money to repair it. They don't have the money to get another one.
>
> When you were confronted about this, you told the police some story. You took this, and you had to plan it somewhat because you didn't just go by yourself. It wasn't like you jumped in the car. You put somebody else in there with you, and you went down to Cincinnati to buy drugs, and then you left the guy's car down there where it got damaged. And here this poor guy is left to pick up the pieces. You don't come into court with any restitution or anything, nothing to fix it. So this guy is left on his own. I don't even know what to tell him because he can't come up with a figure to even tell us what it's worth.
>
> But I've looked at your pre-sentence investigation. You've got a substantial criminal history, which includes felony convictions, failed supervision, prison. Your [Ohio Risk Assessment System] score is a 33, which indicates you're a very high risk to reoffend. That means you're not a good risk to put out on the street. And, you know, in spite of this, this guy—this guy says he forgives you, but he wants restitution and no contact. But you've got no restitution to give him. He's got no way to be made whole.

The trial court then sentenced Brasher to 18 months in prison. Although the trial court, even after pronouncing sentence, gave the state and defense counsel the opportunity to raise any additional matters, no one did, and neither party objected to any portion of the sentencing.

{¶ 4} The court entered Brasher's sentencing entry on October 19, 2018. The entry made no mention of restitution. The victims did not seek to intervene, and neither the state nor Brasher appealed.

{¶ 5} Five months later, on March 11, 2019, the victims filed a complaint for a writ of mandamus in the Twelfth District Court of Appeals seeking an order to compel the trial court to hold a restitution hearing.[2] On October 31, 2019, while litigation of the mandamus case was pending, the state filed a motion with the trial court that sentenced Brasher, requesting that it hold a restitution hearing. Less than two weeks later, the trial court ordered a hearing. Brasher then filed a motion asking the trial court to reconsider its order and deny the state's motion for a restitution hearing and to vacate the scheduled hearing. Brasher asserted that in light of the ongoing mandamus litigation, the case was "under the jurisdiction of [the Twelfth District] and the issue [was] not ripe" for the trial court. The victims filed a motion in response to Brasher's request to vacate the hearing, asserting that holding the restitution hearing was not inconsistent with the existence of the mandamus action and therefore the hearing should proceed before Brasher's trial-court judge.

{¶ 6} On May 4, 2020, the Twelfth District granted summary judgment in the mandamus action in favor of the victims and ordered the trial court to hold a

_____

2. The mandamus case, *State ex rel. Howery v. Powers*, case No. CA2019-03-0045, is not part of the record as contemplated by App.R. 9 and is not a fact that alters or influences the substance of our decision. Nevertheless, for the sake of clarity as to the posture of the case before us today and because all briefs by the parties refer to this separate litigation, we take judicial notice of the mandamus litigation. *See, e.g.*, *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 7-10.

restitution hearing (which the trial court had already determined to do). *State ex rel. Howery v. Powers*, 2020-Ohio-2767, 154 N.E.3d 146 (12th Dist.). The Twelfth District reasoned that Marsy's Law permits a victim to petition the court of appeals for enforcement of the rights set forth in Marsy's Law but that it does not make the victim a party to the underlying criminal case. *Id.* at ¶ 14, citing *State v. Hughes*, 2019-Ohio-1000, 134 N.E.3d 710, ¶ 14. Thus, the Twelfth District concluded that a writ of mandamus was an appropriate avenue to grant relief in the case. *Id.* at ¶ 13-14. Because the victims had a right to restitution and no restitution hearing had been held, the court of appeals ordered the trial court to conduct a restitution hearing. *Id.* at ¶ 17-21. No appeal was taken from the mandamus action, and Brasher was not a party to the mandamus action.

{¶ 7} On July 27, 2020, both because it had already determined to hold a restitution hearing and because it had been ordered to do so in the mandamus action, the trial court conducted a hearing on restitution. At the hearing, the victims' attorney called both victims to the stand.

{¶ 8} One victim, Deborah Howery, testified that she had inherited the stolen car from her sister, that it was in excellent condition, and that it was of great sentimental value to her. She testified that before the sentencing hearing, she obtained estimates to repair the car, a 2002 Mazda, and that the estimates varied from around $2,700 to $4,000. In addition to apparent crash damage, the car suffered significant water damage when it was exposed to the elements for over a month before it was discovered. Howery testified that she did not have the car repaired, because she could not afford to pay for the repairs out of pocket at the time, but she did, in the course of obtaining estimates, pay for a new key and for a tow—at a total cost of $176.55. A police detective performed valuation research for Howery using Kelley Blue Book estimates, and she found that the car was, to Howery's recollection, worth $1,360 on the low end and $3,021 on the high end. Thus, Howery explained that she was asking for restitution of $3,197.55: $3,021

for the car plus $176.55 for the key and towing. However, she acknowledged that ultimately, she sold the damaged car to a mechanic for $200. Thereafter, Howery's husband, Lawrence Hammon, bought another used car, but that vehicle was not for Howery's use nor titled in her name. Howery further testified that she had provided this information with her victim-impact statement and had requested restitution the day of the initial sentencing hearing.[3]

**{¶ 9}** Hammon testified that he too was seeking $3,197.55 in restitution. He also testified that he spent $2,000 on a replacement car. He confirmed that the Mazda had been in excellent condition before being stolen but that it was essentially ruined after the theft because of an apparent collision and its windows being down for over a month during the winter.

**{¶ 10}** In closing argument, Brasher's counsel expressed the view that there were multiple legal issues complicating the situation with respect to who appeared and who did not appear at the original sentencing and who did not request a restitution hearing at that time. However, counsel expressed the belief that, having been ordered by the Twelfth District to conduct a restitution hearing, the parties were now "stuck" with the requirement of doing so. Brasher's counsel thereafter merely argued issues regarding the specific amount of restitution.

**{¶ 11}** On August 18, 2020, the trial court entered a restitution order for $1,976.55. That figure was based on the $2,000 cost of the replacement vehicle, plus $176.55 for towing and the replacement key, less the $200 ultimately obtained when the Mazda was sold. The court declined to grant the requested amount of $3,021 for the Mazda because it had doubts as to whether that figure reflected the fair market value of the car.

---

3. This portion of Howery's testimony is somewhat difficult to reconcile with the events reflected in the transcript of Brasher's October 16, 2018 sentencing hearing, which appears to show that neither she nor her husband were present at sentencing and definitively shows that no one asked to be heard about restitution, including the prosecutor, who specifically declined to be heard on any subject.

{¶ 12} Brasher appealed the trial court's restitution order to the Twelfth District. Howery then sought and was granted leave to intervene, and she filed a brief. The court of appeals concluded that when Brasher was released from prison on February 17, 2020, having served his entire term of imprisonment,[4] the trial court lost jurisdiction to modify his sentence and could not, thereafter, impose restitution. 2021-Ohio-1688, 170 N.E.3d 920, ¶ 19-21. The Twelfth District therefore found that the trial court's August 18, 2020 supplemental sentencing entry ordering restitution was void. *Id.* at ¶ 22.

{¶ 13} The state and one of the victims, Howery, now appeal to this court, and they each present one proposition of law. The state's proposition of law provides:

> Pursuant to Marsy's Law a trial court retains jurisdiction to correct previous proceedings as to restitution following a defendant's conviction and performance of his prison sentence; a trial court's post-completion-of-prison-sentence supplemental sentencing entry ordering restitution is not void.

Howery's proposition of law states:

---

4. Brasher was sentenced following the hearing on October 16, 2018. The judgment entry, filed October 19, 2018, indicates that he was sentenced to 18 months in prison, with 59 days of credit for time served, and optional postrelease control of up to three years. This would mathematically result in a release date of no later than February 17, 2020. The court of appeals noted that "Brasher was released into a local treatment program prior to February 17, 2020," but it nonetheless used February 17, 2020, as his release date "for purposes of [the] appeal." 2021-Ohio-1688, 170 N.E.3d 920, at ¶ 19, fn. 1. There are no docketed records on the circumstances of Brasher's release or whether he was, in fact, placed on postrelease control. However, in their respective briefs before this court, all three parties seem to agree that Brasher was transferred from prison to a treatment facility and was ultimately released from that facility prior to February 17, 2020. None of the briefs suggests that he was placed on postrelease control, and we therefore do not assume that he was placed on postrelease control.

Victims are constitutionally entitled to full and timely restitution, and must be provided an effective appellate remedy for violations of their right to restitution.

This court accepted the appeal on both propositions of law, *see* 165 Ohio St.3d 1442, 2021-Ohio-3938, 175 N.E.3d 1269, and now affirm the judgment of the Twelfth District.

## III. DISCUSSION

### A. Marsy's Law and Restitution

{¶ 14} Article I, Section 10a of the Ohio Constitution, as amended by Marsy's Law, provides:

(A) To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused:

* * *

(2) upon request, to reasonable and timely notice of all public proceedings involving the criminal offense or delinquent act against the victim, and to be present at all such proceedings;

(3) to be heard in any public proceeding involving release, plea, sentencing, disposition, or parole, or in any public proceeding in which a right of the victim is implicated;

* * *

(7) to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim;

* * *

8

(9) upon request, to confer with the attorney for the government; and

(10) to be informed, in writing, of all rights enumerated in this section.

(B) The victim, the attorney for the government upon request of the victim, or the victim's other lawful representative, in any proceeding involving the criminal offense or delinquent act against the victim or in which the victim's rights are implicated, may assert the rights enumerated in this section and any other right afforded to the victim by law. If the relief sought is denied, the victim or the victim's lawful representative may petition the court of appeals for the applicable district, which shall promptly consider and decide the petition.

* * *

(E) All provisions of this section shall be self-executing and severable, and shall supersede all conflicting state laws.

{¶ 15} Restitution is defined "based on the victim's economic loss" and "shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.18(A)(1); R.C. 2929.28(A)(1). "Economic loss" is defined generally in R.C. 2929.01(L) as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense * * *." And this court has recognized that "[a]n order of restitution imposed by the sentencing court on an offender for a felony is part of the sentence." *State v. Danison*, 105 Ohio St.3d 127, 2005-Ohio-781, 823 N.E.2d 444, syllabus. If no one appeals a criminal judgment, it becomes final and res judicata attaches. *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 16-40; *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159

N.E.3d 248, ¶ 20-41. Once an offender has completed his or her sentence, the trial court loses jurisdiction to modify it. *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, ¶ 14-18, *overruled on other grounds by Harper* at ¶ 5, 40.

## B. Marsy's Law and finality in this case

{¶ 16} In this case, the victims submitted information about restitution to the prosecution with their victim-impact statement, and the trial court was evidently aware of that fact, since it remarked during sentencing that the victims wanted "restitution and no contact." Yet the victims did not appear for the October 2018 sentencing or ask to be heard, despite having the right to do so. *See* Ohio Constitution, Article I, Section 10a(A)(2) and (3). Nor did the state object or ask to be heard on the matter of restitution, despite the provisions of Marsy's Law permitting a victim to authorize the prosecution to assert the victim's rights. *See id*. at Section 10a(B). And the trial court, despite being aware of the request for restitution as well as the victims' right to receive restitution under the Article I, Section 10a(A)(7) of the Ohio Constitution, did not order it. The key issue in this case is what should have happened next.

{¶ 17} The Ohio Constitution, as amended by Marsy's Law, provides: "If the relief sought is denied, the victim or the victim's lawful representative may petition the court of appeals for the applicable district, which shall promptly consider and decide the petition." Article I, Section 10a(B). Brasher takes the view that the victims should have appealed, arguing that this court should "acknowledge that 'petition' in paragraph B of Marsy's Law includes 'direct appeal.' " Howery and the state take the position that victims are entitled to meaningful review and that, under the circumstances of this case, the victims were permitted to seek a writ of mandamus.

{¶ 18} In *State ex rel. Thomas v. McGinty*, 164 Ohio St.3d 167, 2020-Ohio-5452, 172 N.E.3d 824, ¶ 1-2 (lead opinion), this court determined that a prohibition

action was not the proper mechanism for alleged victims to challenge discovery orders issued by a trial-court judge permitting a criminal defendant and her defense team to conduct a court-supervised inspection of the alleged victim's residence (which was the alleged crime scene). Because *Thomas* was a four-to-three decision, with one justice concurring in judgment only, the reasoning employed by the opinion is not binding. Nevertheless, the lead opinion offered a sound analysis, reasoning that "the undefined term, 'petition,' in Section 10a(B) is broad enough to encompass an original action *or* appellate review." (Emphasis sic.) *Id.* at ¶ 41. It also determined that the discovery order was a final, appealable order by which the victims were arguably damaged, and thus, they had a right to appeal. *Id.* at ¶ 43-49. Because of that, the victims in *Thomas* had an adequate remedy at law and no right to pursue relief in a prohibition action. *Id.* at ¶ 49. Regardless, the lead opinion did not "determine what 'petition' means in the context of all the Marsy's Law rights under Section 10a(A) that a crime victim may seek to protect under Section 10a(B)." *Id.* at ¶ 42.

{¶ 19} Then, in *State ex rel. Suwalski v. Peeler*, 167 Ohio St.3d 38, 2021-Ohio-4061, 188 N.E.3d 1048, this court determined that it was proper for the victim of a crime to contest the restoration of the perpetrator's firearm rights by filing a prohibition action, reasoning that the victim lacked an adequate remedy in the ordinary course of law because she was not a party to the firearms-restoration proceeding. *Id.* at ¶ 17-18, 36. We held that the victim could not have filed a direct appeal, because "she was not a party to the application proceeding in the common pleas court" and "the fact that a victim has the right to petition the court of appeals under Article I, Section 10a(B) of the Ohio Constitution does not make the victim a party or provide her standing on which to assert an appeal." *Id.* at ¶ 36. We noted that unlike the victims in *Thomas* (who were ordered by the trial court to open their house for inspection by the defendant), "Suwalski was not the subject of a discovery order that required some action or acquiescence on her part."

*Id.* at ¶ 36-37.  Thus, we concluded that the facts in *Suwalski* "present[ed] the type of extraordinary circumstances in which there [was] no clear path in the ordinary course of the law by which Suwalski [could] seek redress."  *Id.* at ¶ 38.

{¶ 20} If we were to strictly follow the distinction set forth in *Suwalski*, we would have to hold that the victims in this case could not have filed a direct appeal, because like the victim in *Suwalski*, they were not the subject of an order "that required some action or acquiescence" on their part.  The *Suwalski* decision has sown confusion about how victims are to assert their right to petition in the court of appeals.

{¶ 21} The distinction set forth in *Suwalski* interprets Marsy's Law too narrowly.  As this court stated in *Thomas*, the term "petition" in Marsy's Law is broad enough to encompass a direct appeal.  *Id.*, 164 Ohio St.3d 167, 2020-Ohio-5452, 172 N.E.3d 824, at ¶ 41 (lead opinion), citing *Jones v. First Natl. Bank of Bellaire*, 123 Ohio St. 642, 176 N.E. 567 (1931), syllabus (referring to appellate review in court of appeals as being pursuant to "a petition in error").  And it is broad enough to encompass a direct appeal without an order that would require action or acquiescence by the victim.

{¶ 22} The Tenth District recently considered a similar matter and concluded that victims seeking to enforce their rights under Marsy's Law may pursue a direct appeal or an original action depending on which is the suitable form based on standing and other traditional criteria for determining the availability of an appeal or an original writ.  *State v. Beach*, 10th Dist. Franklin No. 20AP-589, 2021-Ohio-4497, ¶ 12-16.  We agree with the Tenth District.  To bring our case law back in line with the text of Marsy's Law, when a victim of a crime seeks enforcement of his or her constitutional rights by submitting a request to the trial court, the victim has standing to file a direct appeal.  In short, whether a direct appeal or an original action is the appropriate "petition" for a crime victim to file

relies on the circumstances of the case, particularly whether an appeal is available as an adequate remedy. *Id.* at ¶ 16.

{¶ 23} In this case, the trial court considered and denied restitution to the victims even though they had a constitutional right to it. *See* Ohio Constitution, Article I, Section 10a(A)(7). Despite the fact that victims are not traditional parties to a criminal action and despite the fact that Brasher's victims had not yet formally intervened in the state's prosecution of Brasher, when the victims requested enforcement of their constitutional rights by submitting their restitution request and the trial court denied that relief, they thereby—like the victims in *Thomas*—had clear standing to appeal the restitution portion of Brasher's sentence. *See Thomas* at ¶ 42-49; *see also State v. Bates*, 167 Ohio St.3d 197, 2022-Ohio-475, 190 N.E.3d 610, ¶ 20-22, quoting *Ohio Contract Carriers Assn. v. Pub. Util. Comm*, 140 Ohio St. 160, 161, 42 N.E.2d 758 (1942) (" 'It is fundamental that appeal lies only on behalf of a party aggrieved' " and thus, a "party aggrieved by a court's error * * * must challenge it on direct appeal; otherwise, the sentence will be subject to res judicata"); *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27 (noting that the question of standing depends on whether the party has alleged a personal stake in the outcome of the controversy). On direct appeal of the denial of restitution from Brasher to the victims, the Twelfth District could have reversed the trial court's judgment and remanded Brasher's case for a restitution hearing. And had the victims pursued restitution in a direct appeal, the trial court's judgment would not have become final, avoiding the timing and jurisdictional issues created by the absence of a timely appeal and Brasher's completion of his sentence. Thus, by direct appeal, the victims had an adequate—and far superior—legal remedy than the mandamus action that Howery ultimately filed. *See, e.g.*, *State ex rel. Cherry v. Breaux*, ___ Ohio St.3d ___, 2022-Ohio-1885, ___ N.E.3d ___, ¶ 8-13.

{¶ 24} Without a timely appeal by the victims or the prosecutor, the trial court's initial judgment on Brasher's sentence—devoid of any order of restitution to the victims—became final, and res judicata attached. *See Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, at ¶ 26-27, 34-38; *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, at ¶ 41. Moreover, when Brasher completed his sentence,[5] the trial court lost any jurisdiction to modify the sentence. *Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, at ¶ 14-18, *overruled on other grounds by Harper* at ¶ 5, 40. When the trial court later tried to order restitution, it acted without jurisdiction and, even under both *Harper* and *Henderson*, an order issued without jurisdiction is void. *Henderson* at ¶ 43; *Harper* at ¶ 42.

{¶ 25} While this result is difficult for the victims here, it is necessary in the end to provide clarity to victim-litigants on the proper procedures for appealing restitution orders under Marsy's Law. We stress that there is no question that the victims here had the right to seek and be awarded restitution under Marsy's Law while the trial court had jurisdiction over Brasher's case. Ohio Constitution, Article I, Section 10a(A)(7). But like most constitutional rights, this right can be forfeited if it is not invoked as necessary or required. *See United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), citing *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

{¶ 26} Brasher's victims had a right "to be present at all * * * proceedings," Ohio Constitution, Article I, Section 10a(A)(2), and specifically, the right "to be heard in any public proceeding involving * * * sentencing * * * or in any public proceeding in which a right of the victim is implicated," *id*. at Section 10a(A)(3). However, these crime victims did not appear at sentencing. They may have exercised their right to "confer with the attorney for the government" about

---

5. As noted above, we have no evidence before us that Brasher was placed on postrelease control.

restitution,[6] but the attorney for the government, for whatever reason, did not "assert" the victims' right to restitution. *See* Ohio Constitution Article I, Section 10a(A)(9) and (B). And they had an additional right, when "the relief sought [was] denied," to "petition the court of appeals for the applicable district." Ohio Constitution, Article I, Section 10a(B). But Brasher's victims did not timely appeal the trial court's failure to award restitution. Rather, they let the appellate window close and the judgment become final; only then did they seek to enforce their rights through a collateral attack on a final judgment by seeking a writ of mandamus.

**{¶ 27}** It is unfortunate that these car-theft victims were left with a vehicle so damaged that it could not be repaired and that they have now become a "test case" for how to enforce rights under Marsy's Law. Under Article I, Section 10a(A)(7) of the Ohio Constitution, they had a right to restitution—if they exercised that right. When that right is not invoked at the defendant's trial or raised on direct appeal, thereby eliminating the availability of that remedy, victims must then turn to the civil-justice system to seek compensation from the offender in order to be made whole.

## IV. CONCLUSION

**{¶ 28}** The judgment of the Twelfth District Court of Appeals is affirmed.

Judgment affirmed.

FISCHER and DONNELLY, JJ., concur.

O'CONNOR, C.J., concurs in judgment only, with an opinion.

KENNEDY and STEWART, JJ., concur in judgment only.

---

6. The record is unclear about whether the victims actually requested that the prosecutor advocate for restitution on their behalf as contemplated by Marsy's Law. *See* Article I, Section 10a(B), Ohio Constitution. During the July 2020 restitution hearing, Howery testified that at the time of Brasher's initial sentencing in October 2018, she had provided the trial court with restitution information that was included with her victim-impact statement and that she had requested restitution at that time. The transcript of Brasher's October 2018 sentencing hearing indicates that Howery was not present at that hearing. The record does not specify the extent to which the victims requested that the prosecutor assert their rights. But it is clear that the prosecutor did not assert them on behalf of the victims at Brasher's October 2018 sentencing.

DEWINE, J., concurs in judgment only, with an opinion.

_____

**O'CONNOR, C.J., concurring in judgment only.**

{¶ 29} I agree with the lead opinion that the judgment of the Twelfth District Court of Appeals should be affirmed, but I would do so based solely on the ground that the trial court lacked jurisdiction to modify appellee Kyle Brasher's sentence. Although the lead opinion acknowledges that the trial court "acted without jurisdiction" when it ordered restitution to the victims after Brasher had completed his sentence, lead opinion, ¶ 24, the bulk of its analysis nevertheless focuses on issues that the court of appeals never addressed and that it need not reach given the circumstances of this case. Because this appeal begins and ends with the fact that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibited the trial court from imposing restitution as part of Brasher's sentence after he had completed his 18-month prison sentence for grand theft of a motor vehicle, I concur in judgment only.

{¶ 30} It is well-settled law that once a defendant completes his sentence, the trial court cannot modify that sentence. *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, ¶ 14, 18, *overruled on other grounds by State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248. The reason for such a rule is clear: "[t]he Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against the imposition of multiple criminal punishments for the same offense in successive proceedings," *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 24, and " '[i]f a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause,' " *id.*, quoting *United States v. Fogel*, 829 F.2d 77, 87 (D.C.Cir.1987). Generally, a defendant has a legitimate expectation of finality in his sentence when the time for filing a direct appeal has run and the prison sentence for the relevant crime has been completed. *Holdcroft*

at ¶ 18.  In other words, "a defendant has no legitimate expectation of finality in a sentence that remains subject to direct review," *id*. at ¶ 16, and "when the entirety of a prison sanction has been served, the defendant's expectation in finality in his sentence becomes paramount, and his sentence for that crime may no longer be modified," *id*. at ¶ 18.

{¶ 31} Here, the trial court considered at the original sentencing hearing the victims' request for restitution, but it did not impose restitution as part of Brasher's sentence.  Indeed, as the lead opinion acknowledges, the original sentencing entry "made no mention of restitution."  Lead opinion at ¶ 4.  Neither of the appellants, the state or the victim, appealed that original sentencing entry.  Moreover, the record before us establishes that Brasher completed his 18-month prison sentence prior to the trial court issuing the supplemental sentencing entry, which ordered Brasher to pay restitution to the victim.  As a result, once the time for filing an appeal had run and Brasher had completed his 18-month prison sentence, his legitimate expectation in the finality of his sentence was paramount, and his sentence for that crime could no longer be modified.  *Holdcroft* at ¶ 18.

{¶ 32} Therefore, regardless of whether the victims had standing to appeal the trial court's original sentencing entry or whether the victims should have appealed the entry instead of filing an original action, the protections of the Double Jeopardy Clause prohibited the trial court from reopening the case and resentencing Brasher for the purpose of imposing restitution once Brasher had served his entire sentence.  *See id*. at ¶ 5; *Raber* at ¶ 26.  For this reason, and this reason alone, I would affirm the judgment of the Twelfth District Court of Appeals.

———————

**DEWINE, J., concurring in judgment only.**

{¶ 33} I agree that the trial court erred when it modified Kyle Brasher's sentence by imposing an additional sanction of restitution.  I therefore concur in

this court's judgment affirming the judgment of the Twelfth District Court of Appeals.

{¶ 34} There are two independent reasons why it was inappropriate for the trial court to modify Brasher's sentence. First, the trial court lacked jurisdiction to change Brasher's sentence after it had issued a final judgment and the time to appeal that judgment had expired. Second, because Brasher had a reasonable expectation of finality in his sentence, the trial court's imposition of an additional sanction violated his rights under the Double Jeopardy Clause. I write separately to clarify the difference between these two concepts.

**The trial court lacked jurisdiction to modify Brasher's final criminal sentence**

{¶ 35} An order to pay restitution in a criminal case is a part of the sentence. *See* R.C. 2929.01(DD) (restitution is a criminal sanction imposed as punishment for an offense) and 2929.01(EE) (the sentence is the combination of sanctions imposed by the sentencing court); *see also State v. Danison*, 105 Ohio St.3d 127, 2005-Ohio-781, 823 N.E.2d 444, ¶ 6, 8 (an order of restitution is part of the sentence). And here, the trial court lacked jurisdiction to modify Brasher's sentence once it became final and the time for filing a direct appeal had expired.

{¶ 36} As this court has explained, "[T]he trial court's jurisdiction over a criminal matter is limited once the proceedings are complete. Generally, a trial court loses jurisdiction to modify its judgment once that judgment has been affirmed on appeal." *State ex rel. Davis v. Janas*, 160 Ohio St.3d 187, 2020-Ohio-1462, 155 N.E.3d 822, ¶ 11, citing *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 378 N.E.2d 162 (1978). "Relief from final judgments in criminal cases is confined to the procedures authorized by statute or rule," and "[o]utside of those procedures, there is no statute or criminal rule permitting a trial court to * * * substantively change a defendant's sentence after that sentence has been affirmed on direct appeal." *Id*. Thus, except when

authorized by statute or rule, a trial court lacks jurisdiction to modify a criminal sentence once it has become final and it is either affirmed on appeal or the time to appeal has expired. And there is no statute or rule authorizing the trial court to impose a belated restitution order in a criminal case.[7] The amendments made to the Ohio Constitution as part of the Marsy's Law ballot initiative have not changed this aspect of the law.

{¶ 37} The Marsy's Law amendment grants crime victims a right to "full and timely restitution from the person who committed the criminal offense." Ohio Constitution, Article I, Section 10a(A)(7). This broad guarantee provides that victims have a constitutional right to the full amount of restitution established in the trial court. But the Marsy's Law amendment operates in conjunction with state law, except when there is a conflict between the amendment and a statute, in which case the amendment controls. *See* Ohio Constitution, Article I, Section 10a(E) (providing that the amendment "shall supersede all conflicting state laws").

{¶ 38} The amendment does not conflict with statutory law making restitution part of the criminal sentence. It does not purport to give victims the ability to collaterally attack final judgments. Nor does the amendment evince any intent to enlarge the jurisdiction of the courts of common pleas and permit them to reopen closed cases. Thus, while the amendment grants crime victims a right to restitution, it does not alter the existing law providing that an order of restitution in

---

7. Ohio law authorizes the trial court to modify the payment terms of a restitution order imposed as part of a criminal sentence. *See* R.C. 2929.18(A)(1) ("The victim or survivor may request that the prosecutor in the case file a motion, or the offender may file a motion, for modification of the payment terms of any restitution ordered. If the court grants the motion, it may modify the payment terms as it determines appropriate"). Thus, when restitution is imposed as part of a sentence, this provision gives the trial court continuing jurisdiction to modify the "payment terms" of the "restitution ordered." But it does not grant the trial court authority to impose a *new* sanction of restitution after a final judgment has been issued.

a criminal case is a part of the defendant's sentence.[8]  And a court loses jurisdiction to modify a final sentence after the time to appeal has expired.

**Brasher had a legitimate expectation of finality in his sentence, so the trial court's restitution order also violated his Double Jeopardy rights**

{¶ 39} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against the imposition of multiple punishments for the same offense, beyond those authorized by the legislature.  *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).  This protection further prohibits "sentence adjustments that upset a defendant's legitimate 'expectation of finality in his sentence.' "  *Warnick v. Booher*, 425 F.3d 842, 847 (10th Cir.2005), quoting *United States v. DiFrancesco*, 449 U.S. 117, 136, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

{¶ 40} In this case, the court of appeals concluded that once Brasher had completed his prison sentence, "the trial court lost jurisdiction to modify [his] sentence pursuant to the decision in *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382."  2021-Ohio-1688, ¶ 19.  This court's decision in *Holdcroft* addressed, among other things, a defendant's legitimate expectation of finality in his sentence after he had fully served the prison portion of the sentence.  *Id*. at ¶ 12.  A defendant's expectation of finality in his sentence relates to the question whether a change in the sentence would violate the Double Jeopardy Clause.  *See Warnick* at 847.  But in *Holdcroft*, this court conflated that question with the issue of a trial court's jurisdiction to modify a sentence, ultimately holding that "once a valid prison sanction has been served, * * * the court has lost

---

8. The imposition of restitution as a criminal sanction does not preclude a victim from filing a separate civil action against the offender.  R.C. 2929.18(H).  This appeal involves an order of restitution imposed as part of a criminal case, so we have no occasion to consider whether the constitutional right to restitution has any application in the civil context.

*jurisdiction* to modify the sentence" (emphasis in original), *id*. at ¶ 14. This statement is incorrect, and it has caused confusion for courts and litigants.

{¶ 41} The Double Jeopardy Clause does not always bar an increase in a defendant's sentence after he has served the prison term originally imposed. We have explained, for instance, that a defendant has no legitimate expectation of finality in his sentence while it remains subject to review on direct appeal. *State v. Roberts*, 119 Ohio St.3d 294, 2008-Ohio-3835, 893 N.E.2d 818, ¶ 16-19, citing *DiFrancesco* at 136-139. This is true even if a defendant has finished serving his sentence while the direct appeal is pending. *State v. Christian*, 159 Ohio St.3d 510, 2020-Ohio-828, 152 N.E.3d 216, ¶ 1, 21-22. Thus, when a defendant's sentence is vacated on direct appeal, the trial court may properly resentence the defendant— even if he has already served the original term. *Id*.

{¶ 42} Consequently, the completion of a prison term does not deprive the trial court of *jurisdiction* to modify a sentence. Indeed, *Holdcroft* did not point to any statute providing that a trial court is divested of jurisdiction over a criminal case once a prison sentence has been served.

{¶ 43} That leaves us to consider whether the imposition of an additional term to Brasher's sentence nevertheless violates the Double Jeopardy Clause. The question whether a change in sentence will violate the Double Jeopardy Clause "depends upon the extent and legitimacy of a defendant's expectation of finality." *Roberts* at ¶ 12. Most of the time, a defendant will have a legitimate expectation of finality in his sentence after any appeal is concluded or the time to appeal has expired. *See DiFrancesco*, 449 U.S. at 136, 101 S.Ct. 426, 66 L.Ed.2d 328.

{¶ 44} But laws passed by the legislature can extend the point at which a defendant's expectation of finality in his sentence becomes concrete. As the United States Supreme Court explained in *DiFrancesco*, defendants are charged with knowledge of statutory law, and many statutes inflict "criminal sanctions under which the defendant is unaware of the precise extent of his punishment for

significant periods of time." *Id*. at 137. "The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id*.

{¶ 45} As I have explained, though, the controlling laws in this case make restitution a part of the criminal sentence. And in the absence of some statute authorizing the trial court to impose an award of restitution after a final judgment of conviction is entered, Brasher could reasonably expect that his sentence would not be changed once it became final and the time to appeal had expired. Thus, under the circumstances here, Brasher had a legitimate expectation of finality in his sentence, and the subsequent imposition of a restitution sanction therefore violated his double-jeopardy protections.

**Marsy's Law permits a victim to appeal a restitution award**

{¶ 46} The Marsy's Law amendment permits victims to assert their constitutional right to restitution in the criminal case against the defendant. Article I, Section 10a(B). And "[i]f the relief sought is denied, the victim or the victim's lawful representative may petition the court of appeals for the applicable district, which shall promptly consider and decide the petition." *Id.* (The General Assembly has recently passed legislation that further details the procedures for victims to pursue appeals, though at the time of this writing, the legislation has not yet been signed into law by the governor. *See* 2022 Sub.H.B. No. 343, available at https://www.legislature.ohio.gov/legislation/legislation-status?id =GA134-HB-343 (accessed Dec. 19, 2022) [https://perma.cc/LQ7F-W5X2].)

{¶ 47} The problem in this case is that the victims did not object to the trial court's denial of restitution in the trial court and did not take any action to pursue an appeal from the trial court's judgment. Further, the victims did not file their mandamus action until after Brasher's criminal judgment had become final and the time for appeal had passed. By that time, the trial court lacked jurisdiction to modify Brasher's sentence. Likewise, Brasher obtained a reasonable expectation

22

of finality in his judgment once that judgment became final and non-appealable. Therefore, double-jeopardy protections also precluded the trial court from imposing an additional criminal sanction ordering Brasher to pay restitution.

## Conclusion

{¶ 48} I agree with the lead opinion that the Marsy's Law amendment grants crime victims the ability to file a direct appeal from a trial court's decision denying their request for restitution. That didn't happen in this case. Therefore, once Brasher's sentence became final and the time to appeal that sentence had passed, the trial court lacked authority to modify the sentence to include an additional sanction of restitution.

———————————

John C. Heinkel, Butler County Prosecuting Attorney, for appellant state of Ohio.

Elizabeth Well and Bobbie Yeager, Ohio Crime Victim Justice Center, for appellant Deborah Howery.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellee.

———————————